Good morning, voters. My name is Jason Carr and I represent petitioner Helmut Dante Pattison. This case involves essentially two Supreme Court opinions. One in my favor, one against. Itself, it requires that from the general rule of applicability that psychiatric testimony can be used against the defendant and trial violates its fifth and sixth amendment rights in the U.S. Constitution. If the defendant says, if he puts it in this, if he puts it in this page, it's okay. But it's not good on this exception. And that really, well, that's an excellent question because it boils this case down to really what its essence is, which is what is the scope of the Buchanan exception? What are the limitations of it? And what I propose here is that the Buchanan exception is not open-ended because what happened in this case... Well, it may not be open-ended, but if you would agree with us, would you not, that your client suggested that he should be, if you will, faulty, incompetent, and therefore not guilty? He was completely insane at the time that the incident took place. Well, that was his argument, right? That's his argument. Well, I understand. So what we're saying is then if that's what he said and he presents this evidence that suggests that that's the way it is, relying on evidence that was, in fact, found while he was in this treatment facility and not letting the state use the same kind of evidence is a little bit prejudicial under Buchanan. But that's the essence of it right there, Your Honor. It was not the same kind of evidence. Which why wasn't it? Because Buchanan says that the holding of Buchanan is that it would be unfair for the prosecution not to be able to use the same report that was requested by the defendant. Well, so what you're suggesting is because it wasn't simply a report that they were using evidence that they saw while he was there, maybe not evidence in the report, that others should use the same kind of evidence that they saw and perceived there against him. Yes, among other things, Buchanan is about, first of all, there's a question, and this kicks off with it, you can't use non-experts. Does that bode at all? The rebuttal evidence that's in question here was all non-expert testimony. None of these witnesses were certified as an expert. One of them was, in fact, from Trisicard, offering his plain opinion as to whether he thought Patterson was schizophrenic or not. Okay, so I understand your argument. Your argument is Estelle has one suggestion, Buchanan has another suggestion, and this is generally in the middle. I didn't find any case which would negate it. I don't say Buchanan covers this case, but I don't find a case that is dead set in the middle from the Supreme Court. And at that point, there is no clear precedent, and I can't help you. Right? Well, we are certainly within 22 parameters. The standard of review here is 2254-D1. I know. The unraceful application, wrong. I would concede it's not contrary to it because the Nevada Supreme Court, opinion in question, did cite the relevant controlling law of Buchanan, and it's still to be inquired. So the question here is, did the Nevada Supreme Court reasonably apply the Buchanan exception? And the evidence in this case strongly suggests it does because it went far, far afield from what Buchanan allowed in Buchanan and in Powell v. State, which is a case that came after Buchanan and discussed Buchanan in a Supreme Court case and cited in this Court's opinion in Hendricks. But as they are suggesting, I mean, your argument has to be Buchanan doesn't apply, and therefore Estelle applies, and it's a clear Supreme Court precedent. If your argument is there is no clear Supreme Court precedent, you lose. It's not that Estelle, you're outweighed. Respectfully, you suggest you're outweighed. I would argue that Estelle is very clear that if there is no Supreme Court precedent, which covers this particular case, you lose. But we need a general rule of observability. See, look at the Strickland analysis. Everybody would concede that Strickland v. Washington controls a lot of the effective assistance of counsel cases, but no one would suggest that there has to be an identity of facts with Strickland. In any given IAC claim, someone I am stating here is in Estelle v. McGuire, sets forth the general rule of observability, the rules that all courts in this country must abide. Buchanan sets forth an exception to that rule. This case is about, under the unique facts of this case, is that the Supreme Court unreasonably applied those two cases. And there is little support for the argument that I would advocate for when the facts state identical case, because the facts do matter. I'm not worried about the actual identity. I'm worried about an issue which is not that there is a particular report one can therefore reference, but action while the defendant was at the treatment facility. That is the subject of the report, if you will, and the subject of the experts who testify for the defendant. Well, the defendant's experts did use that information, but I would note that if you look at Excerpts of Argument 605 to 607, Dr. Vincent Sporra, whose report was the most extensive and the most objectively scientific in this case by far, if you look at all of the information he looked at in rendering his decision, this extravagant information was what I'd want to fall apart with at least 30 or more resources that he utilized. But that's not really, I want to stress, I would like to stress, that what's important here is this notice instilled. Buchanan and Estelle, people have already talked about it, it was the defense counsel and the defendant was to have noticed that the report and the psychiatric evidence that's going to be used against them will be used, or just potentially will be used against them, and there's no way that could have happened in this case. In that manner, what do you mean by that? That it should be used against him when he ran an insanity defense. Exactly. Well, that's the law, though, that if you put your insanity in an issue and you use reports that the government can't. I understand, but that's what happened here. I wouldn't have an issue with that. Okay, so differentiate this from that. We're talking about a competency exam that occurred for 631 days before Patterson even entered, obviously not guilty by reason of insanity. We're not talking about expert commentary. He's in a psychiatric facility, 22 months, and it's really not that unique. You're going to have people that are working there, they're going to testify with regard to what he does, and you're suggesting that that can't be done. Well, we experienced this in another Supreme Court case, which helps us determine what the parameters of the candidate exception are, as we might in Greenfield. And what the Supreme Court clearly held in that case is that general observations on an offendant after he's been reanalyzed and the attachment of counsel occurs, after the attachment of counsel occurs, cannot be used to defeat an insanity defense. And Alex Smith, of course, in court, the testimony that occurred here, the rebuttal, three witnesses that are at issue, was mainly about their observations of Patterson, and even worse, about how he wouldn't cooperate with him. He couldn't talk about the events. He couldn't talk about the psychotic delusions. And there's evidence in the record that he was influenced by his counsel not to do those things, not to cooperate, and not to bolster his life. Well, it was more that he didn't illustrate his delusions, not so much that he didn't talk about them, but that he never demonstrated them during the 22 months he was there. And that is right what happened in Wainwright v. Greenfield, where there was police officers admittedly, but they said, well, he acted fine to us. He was in the Supreme Court delusion. He was in the where the points are. Right. But here we have a prison guard. I'll say the same thing. I'm worried about your Fifth Amendment claim under Doyle because I'm not sure he ever pled it. Oh, I don't think you pled it, Your Honor. I don't think you pled it. I mean, I read through the prosecution. Your claims are that prosecution relied on an inadmissible and privileged information to rebut an insanity defense. Then, in the context of ineffective assistance of counsel, the state's repeated comments on Pattinson's silence post-arrest violated his Fifth and Fourteenth Amendment due process. In reply to their answer to your petition, you allege the arguments, but they're all under ineffective assistance of counsel. There's no claim under Doyle. Well, they are certainly related. Related? That's the way you complete anything you want, and I'm supposed to come up with it. I mean, the district court didn't come up with it. In fact, what happened with the Supreme Court is the Supreme Court, looking at what you said, said, it can't be so because they were all, in effect, going along with Buchanan. They were all statements going along with Buchanan. They didn't even recognize this Fifth Amendment claim under Doyle. If you look at my replies, except for the record of approximately page one, I literally go see it, I discuss it, and maybe rebuild it in some detail in that sentence. No, but in reply, it's not the best place to raise this. I'm sorry. You can make a great argument that you want, but the honest truth is I tried to find the Fifth Amendment claim under Doyle. I'm not going to be peaceful in my initial decision here on that. I'm going to carry it here in our pro bono process. I'm going to move your rebuttal because I'm hoping to put it in your favor. So you're considering this unobtainable, you counseled in the district court. I was, and I did not make a petition. I didn't make the reply, but I would not complain if he saw it in the petition. I would definitely not discuss it. It's just going to be appropriate in the initial decision. I'm out of time, Your Honor. Thank you. Thank you. Ma'am, police and court. Jeffrey Connors from the Nevada Jury General's Office on behalf of the respondents. I would disagree with my opposing counsel's characterization of the two holdings in this case. I don't think Estelle is very favorable to him. In fact, if you look at Estelle itself, it recognizes that the holding of the case would have been different if Estelle had put his petitioner in that case and put his mental health as an issue. If he requested an evaluation, or if he presented a defense that put his mental health as an issue. Correct. For Estelle, right? Correct. And what happened in that case was you had a situation where the state put on, it wasn't a rebuttal, but an attempt to establish an essential part of Texas' capital sensing structure that the petitioner had a risk of future dangerousness. And it was there that the court expressed and recognized that had the defendant himself put his mental status at issue, the result likely would have been different. And then we come back to Buchanan, and the court addresses the question that it left open in Estelle and says, indeed, as this court recognized in Pollack v. Wood, the court recognized that a defendant who asserts a mental status defense lacks Fifth Amendment rights to remain silent regarding the mental status that he has placed at issue. Let me make sure I understand the posture of the case. There's no question that the defendant killed his close relatives. And that he did so with the belief that they were primarily, you know, one of those coming after him with a knife or something like that. That was the evidence at trial, Your Honor, and there was a dispute between the experts as to whether or not he was suffering a delusion as a result of some longstanding mental illness or it was coming as psychosis. And the issue was whether this was drug-induced, in which case he would be responsible for whether it was a longstanding psychosis. Is that correct? Correct. At least my understanding of it is that under Nevada law, in order for him to establish non-guilty by reason of insanity, he has to establish some sort of mental defect as opposed to something that was the result of voluntary intoxication. And so in this case, I think it's quite clear that he put his mental status at issue. In fact, his own experts relied on these very safe reports in reaching their own conclusions, which very clearly brings these reports within the world. He's not really objecting to the report so much as to his observations outside of the report. Your Honor, my view of this, and I looked at this quite closely again last night just to make sure I looked at the reports and compared them with the staff testimony from Lakes Crossing, and I don't think that they testified to anything that's really outside the scope of their reports. So if they did, would that be a violation? I don't know if it would or not, Your Honor. I don't think we have clearly established that at all. This is the worry that I have on a big canon. It doesn't seem to me that there's any question that the state can present evidence of the reports and evidence that's in the reports. It seems to me that the question is can the state present psychiatric evidence, including testimony based on observations of the defendant, that are made during the evaluation? Well, two things, Your Honor. I think even if you look at Estelle, the court recognizes that there's a difference between somebody's actions and their conduct and their statements. Whether they're serving him in the setting, I don't know that that actually implicates the self-incrimination clause in the Fifth Amendment at all. And so I don't know that Estelle would even govern that situation. And so to me, there's very clearly an absence of clearly established federal law here. What the Nevada Supreme Court did here is a manifesting reasonable application of Buchanan. They cited the Estes decision, which is in the Nevada Supreme Court, that applies Estelle and Buchanan. And I really don't think there's any question that what the Nevada Supreme Court did here was objectively reasonable. If there's not any further questions from Will or I would like to go ahead. Go ahead. What about the little thing sticking out here as the lay opinion? I mean, that fellow had been there. I'm talking about the fellow, he is the lay opinion. He'd been there quite some time, not a lot of experience, but he was a lay person. Is that a separate issue? I don't think so, because I don't think he was not making any conclusions as to whether or not he was actually insane at the time of the offense or not. He was merely testifying as to his observations of conduct. He wasn't just his observations. He gave an opinion based upon those observations from what I read. Well, I don't think he gave an opinion. He did say that he did not observe past acting in a way that would be consistent with somebody, you know, answering some sort of internal stimuli or grandiose delusions. But I don't think he made any expert conclusion as far as I'm concerned. To me, he was just observing him and reflecting that, you know, he wasn't whispering to himself or anything like that, and that he had observed other people who had, you know, been major psychotic disorders and acted in front of him before. So I think he was testifying about his own personal experience as an employee like Strauss. And so what about the Doyle claim? Well, I think, first of all, the Doyle claim, I think, had significant problems. I agree with your Honor that it was not plotted in the petition. And in addition to that, it was very clearly not presented in Singapore. It was presented in the context of an effective assistance council claim. But it's never been presented in Singapore, which raises numerous problems in a federal human rights proceeding because it's never been exhausted. It's likely now procedurally defaulted. And, you know, the state's never going to have an opportunity to do it properly and responsibly. And if we disagree? If you disagree, I would ask for an opportunity to debrief him because I don't think it was appropriately presented in the Certificate of Independence. Certainly, we didn't address it in the COA. Right. And so I think, at the very least, it's an uncertified issue. I referred to silence. What's that, Your Honor? I thought the COA referred to silence. Am I wrong on that? Well, it says, was a repellent status in the 14th Amendment rights. The due process and termination of asylum were violated when the trial court allowed the state to introduce testimony from the staff. That's all I'm saying. Yeah, I don't think that that addresses the joy of a claim. And, you know, at the very least, I would request that the court provide the state with an opportunity to brief it if you think it is part of the COA. All right. Thank you, Your Honor, for your question. It's you, the court firm that just supports you. Thank you. I realize I took you over with all the questions. I'll give you 30 seconds to sum up here. First of all, I think I have plenty of opportunity to brief the Doyle claim when they're answering your questions. Doyle is, in essence, the right to remain silent case. But from where you go, Wayne Wright v. Greenfield applies here because it informs us about the contours of the Buchanan exception. The Buchanan exception is limited. In Buchanan, it says the right in Alfie, Texas. It's meant to be a limited exception to allow the admission of the expert reports that the defendant requested. Here we have a lay observation from the prison guard, Mr. Beeson, which seems to fall right within the parameters of Wayne Wright v. Greenfield, which commented on the defendant, which is in case of the defendant's right to remain silent. And whether or not a opinions of whether he acts psychotic or illicit is there a fifth amendment violation, a violation of his right to remain silent, and Wayne Wright v. Greenfield has direct responsibility for this case. Thank you. Thank you. Case 1516455, Patterson v. Margo, is submitted.
judges: Schroeder, N.R. Smith, Piersol